The undersigned have reviewed the prior Opinion Award based upon the record of the proceedings before Deputy Commissioner Douglas Berger and the briefs before the Full Commission. The appealing party has shown good ground to reconsider the evidence and to reverse the Opinion Award.
* * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. All stipulations contained in the Pretrial Agreement are received into evidence.
* * * * * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission makes the following:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 29 year old male with a high school education. Plaintiff had been employed by the defendant-employer for over 5 years.
2. On April 20, 1994, plaintiff was carrying 5 or 6 cases of canned drinks on a hand truck up a set of steps. Plaintiff felt a pop in his neck mid-way while travelling up the steps. Plaintiff immediately experienced pain in his left shoulder and left arm. As the day progressed, plaintiff developed stiffness in his neck.
3. The parties entered into a Form 21 Agreement whereby the defendant-employer admitted the compensable nature of the shoulder injury sustained on April 20, 1994.
4. The plaintiff was eventually diagnosed as having a neck strain.
5. The plaintiff was compensated for a period of lost time and received medical treatment for the compensable shoulder and neck problems.
6. There is insufficient expert medical evidence of record to find by its greater weight that plaintiff's work related incident involving transporting drinks up some steps on April 20, 1994, caused or aggravated the C5-C6 herniation that was revealed in the MRI plaintiff received on November 15, 1994.
7. There is insufficient medical evidence of record to find by its greater weight that plaintiff's work-related incident on April 20, 1994, aggravated any pre-existing degenerative conditions that the plaintiff may have had on that date.
8. There is insufficient expert medical evidence of record to find by its greater weight that plaintiff's work-related incident on April 20, 1994, caused 10% permanent partial disability that plaintiff has sustained to his neck.
9. There is insufficient expert medical evidence of record to find by its greater weight that plaintiff's headaches are causally related to the April 20, 1994, work-related incident.
10. Plaintiff received 26 weeks of short-term disability pay from August of 1994, to the middle of February, 1995, from a short-term disability fund fully paid for by the defendant-employer.
11. As the result of the April 20, 1994, work-related incident, plaintiff was treated by Dr. James W. Serene who obtained x-rays, a bone scan, and a cervical MRI scan. Dr. Serene treated the plaintiff conservatively with physical therapy and medication. Dr. Serene released the plaintiff to return to work at light duty on May 30, 1994. On June 6, 1994, the plaintiff was released to return to his regular job with no restrictions. Dr. Serene did not believe there would be any permanent partial disability.
12. The plaintiff returned to see Dr. Serene on June 27, 1994, stating that he had aggravated his upper back pain. Dr. Serene released the plaintiff to return to work at light duty. On July 5, 1994, Dr. Serene noted that the plaintiff could continue on light duty through July 26, 1994, at which time he should be able to return to his regular job with no restrictions. The plaintiff was released to return on an as-needed basis with no permanent partial disability.
13. The defendant-employer offered the plaintiff light duty work during the periods of time that the plaintiff was released to work at light duty only. When Dr. Serene released the plaintiff to return to regular work, his regular job was offered to him, however, the plaintiff chose not to return to work at Pepsi Cola.
14. At the time of the hearing, plaintiff had obtained a part-time job as a security guard. The plaintiff obtained this part-time job on July 8, 1995.
15. The plaintiff returned to see Dr. Serene on April 13, 1995. At that time, it remained Dr. Serene's opinion that the plaintiff was at maximum medical improvement and did not have any permanent partial disability. In Dr. Serene's opinion, the plaintiff's condition had not changed since he last saw him in July of 1994. Dr. Serene did not believe that the plaintiff's current symptoms were causally related to his prior injuries at Pepsi Cola, and believed the plaintiff could return to regular work.
16. Dr. Serene is a Board Certified Orthopedic Surgeon. He has been board certified for over 10 years. Based on Dr. Serene's education, experience, and training, as well as his position as the treating doctor, the Full Commission gives greater weight to his testimony and opinions than the testimony or opinions of Dr. Ziglar or Dr. Daubert.
17. Dr. Ziglar is a family doctor board certified in the specialty of internal medicine. Although Dr. Ziglar released the plaintiff to remain out of work, the release was based purely on the plaintiff's subjective complaints of pain. Dr. Ziglar did not have any objective basis to dispute Dr. Serene's opinion that the plaintiff had no permanent partial disability, or that the plaintiff was capable of returning to regular work in July of 1994.
18. Dr. Daubert is an orthopedic surgeon who has recently been board certified. Dr. Daubert had been licensed approximately two years as of October 10, 1995, and was not the plaintiff's original treating physician. Dr. Daubert did not see the plaintiff until October 13, 1994.
19. Plaintiff is not accepted as a credible and convincing witness as to his description of pain in his neck and his inability to work as the result of that pain. To the extent the doctor's opinions rely on the subjective complaints of the plaintiff, such opinions are given limited weight.
20. The plaintiff offered Dr. Ziglar money to sign a disability note. The plaintiff offered the money to Dr. Ziglar in order to "see things my way." In addition, when Dr. Ziglar finally told the plaintiff that he would no longer write him out of work, the plaintiff immediately represented to Dr. Ziglar that he was capable of returning to work as a long-distance truck driver, which would involve strenuous work. Dr. Ziglar questioned the plaintiff's credibility.
21. Numerous test studies including x-rays, a bone scan, cervical MRI, thoracic MRI, EMG's, myelogram and post-myelogram CT scan have failed to document any objective injury. Although one MRI scan did indicate a small herniated disc, this finding was not confirmed by the subsequent myelogram and post-myelogram CT scan. The myelogram and post-myelogram CT scan was also negative for any type of degenerative findings.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the undersigned make the following:
CONCLUSIONS OF LAW
1. On April 20, 1994, plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer in that he sustained a strain to his neck as the result of a specific traumatic incident of the work assigned. N.C. Gen Stat § 97-2(6).
2. As a result of the injury, the plaintiff is not entitled to receive any additional compensation for temporary total disability or temporary partial disability after being released to return to his regular work on July 26, 1994.
3. Plaintiff has not sustained any permanent partial disability as the result of the April 20, 1994, incident at work.
* * * * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Plaintiff's claim for temporary total and/or temporary partial disability benefits after July 26, 1994, is hereby DENIED.
2. Plaintiff's claim for benefits pursuant to N.C. G.S. § 97-31 is hereby DENIED.
3. Defendants shall pay the costs.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ________________________ THOMAS BOLCH COMMISSIONER
DISSENTING:
S/ ________________________ COY VANCE COMMISSIONER